UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN D. LAWSON, individually and on behalf of all others similarly situated, | Case No. 3:18-cv-00284-LRH-CLB |
| Plaintiffs, | AMENDED ORDER[1] |
| v. | |
| KLONDEX MINES LTD., et al., | |
| Defendants. | |

Klondex Mines Ltd. ("Klondex"), Rodney Cooper, Mark Daniel, Jamie Haggarty, Richard J. Hall, Paul Andre Huet, William Matlack, Charles Oliver, and Blair Schultz, (collectively "defendants") move this court to dismiss the First Amended Complaint. ECF No. 34.[2] John D. Lawson, lead plaintiff on behalf of all others similarly situated,[3] (collectively "Lawson" or "plaintiffs"), opposed the motion to dismiss (ECF No. 43), and defendants replied (ECF No. 45). In conjunction with their motion to dismiss, defendants requested the court take judicial notice of 6 documents (ECF No. 35), which Lawson also opposed (ECF No. 44). Defendants' reply to Lawson's opposition to the court taking judicial notice is contained within their reply to the motion to dismiss. *See* ECF No. 45. After briefing on defendants' motion to dismiss had closed,

---

[1] This Order was amended solely to correct various typographical errors and some citations.

[2] Unless otherwise noted, ECF numbers within this order refer to the above captioned case.

[3] The court consolidated three pending actions—*Gunderson v. Klondex Mines, Ltd. et al.*, 3:18-cv-00256-LRH-CLB, and *Baker v. Klondex Mines Ltd. et al.*, 3:18-cv-00288-LRH-CLB—into the above captioned case, and appointed Lawson's chosen counsel, Levi & Korsinsky LLP, as class counsel and Aldrich Law as liaison counsel. *See* ECF No. 23. Within this order, references to "plaintiff Baker" refers to consolidated case *Baker v. Klondex Mines Ltd. et al.*, 3:18-cv-00288-LRH-CLB.

1

defendants filed a motion for leave to file a supplement to their reply brief (ECF No. 46), to which Lawson responded (ECF No. 47). As set forth below, the court grants defendants' motion to dismiss on the ground of international comity, waiver, and because Lawson has failed to state a claim on which relief can be granted. Defendants' motion to supplement their reply brief is, accordingly, denied as moot.

## I.      BACKGROUND

On March 19, 2018, Klondex announced that it had entered into an Agreement and Plan of Merger ("Arrangement Agreement") with Hecla Mining Company ("Hecla") and 1156291 B.C. Unlimited Liability Company ("Merger Sub"), a wholly owned subsidiary of Hecla. ECF No. 31 ¶ 1. Klondex indicated in this press release that the "Transaction will be implemented by way of a Court-approved plan of arrangement under the Business Corporations Act (British Columbia) and will require the approval of: (i) 66 2/3% of the votes cast by the holders of Klondex's common shares, (ii) 66 2/3% of the votes cast by the affected securityholders of Klondex voting as a single class, and (iii) if applicable, a majority of the votes cast by the holders of Klondex's common shares after excluding any votes of Hecla and other persons required to be excluded under Canadian Multilateral Instrument 61-101 Protection of Minority Security Holders in Special Transactions, all at a special meeting to consider the Transaction." *Id.* ¶ 65.

On May 23, 2018, Klondex filed a Preliminary Proxy Statement on a Schedule 14A with the Securities and Exchange Commission ("SEC"). *Id.* ¶ 2. Then, on June 5, 2018, Klondex filed a petition with the Supreme Court of British Columbia, requesting (1) an *ex parte* interim order; (2) a final order "pursuant to section 291 of the *Business Corporations Act*, S.B.C., 2002, c. 57, as amended, (the "BCBCA") approving" the Arrangement Agreement between Klondex, Hecla, and Merger Sub, and declaring that the terms and conditions of the Arrangement Agreement were "procedurally and substantively fair and reasonable;" and (3) any other order for further relief that the Court deems necessary. ECF No. 35-1 at 328-29. After a hearing before the Honourable Master Miur on June 6, 2018, the Supreme Court of British Columbia issued an Interim Order, setting forth, among other things, (1) that Klondex was permitted to hold a shareholder vote on July 12, 2018, at 8:00 a.m. in Toronto, Ontario, to consider approval of the Arrangement Agreement;

(2) who was permitted to attend the meeting; (3) percentage of votes that must approve the Arrangement Agreement; (4) the dissent rights available, including that any Klondex shareholder or securityholder are to deliver a written notice of dissent to the Arrangement Agreement, by mail, by July 10, 2018; and (5) that any securityholder wishing to appear at the final hearing was to file a Response to the Petition, including all evidence on which he or she was to rely, by July 13, 2018. *Id.* at 316-325.

On June 12, 2018, Klondex mailed the information circular and Definitive Proxy Statement (the "Proxy") to security and shareholders and filed the Proxy with the SEC. ECF No. 35-1 at 3; ECF No. 31 ¶ 2. The Proxy included the Petition, as submitted to the Supreme Court of British Columbia, as Appendix G (ECF No. 35-1 at 326-348), the Interim Order as Appendix F (*id.* at 315-325), the Arrangement Agreement, summarized in part 8 (*id.* at 81-98) and attached in full as Appendix P (*id.* at 552-698), and two fairness opinions, summarized in parts 9 and 10 (*id.* at 98-115), and attached in full as Appendixes C and D (*id.* at 285- 296). Attached to the Proxy was a Notice of Annual and Special Meeting of Securityholders which informed shareholders that both a special and annual meeting would be held on July 12, 2018, in part, to vote on the Arrangement Agreement between Klondex, Hecla, and Merger Sub. *Id.* at 8; ECF No. 31 ¶ 2. This Notice further provided, in bold lettering:

> **Failure to strictly comply with the provisions of the BCBCA, as modified and supplemented by the Plan of Arrangement, the Interim Order and the Final Order, may result in the loss of any right of dissent.**

ECF No. 35-1 at 9 (emphasis in original).  A full description of shareholder dissenters' rights was articulated in part 4 of the Proxy, providing in relevant part:

> To exercise Dissent Rights, a Klondex Shareholder must dissent with respect to all Klondex Shares of which he, she or it is the registered and beneficial owner. A Registered Klondex Shareholder who wishes to dissent must deliver written notice of dissent to Klondex and such notice of dissent must strictly comply with the requirements of Section 242 of the BCBCA, as modified and supplemented by the Plan of Arrangement, the Interim Order and the Final Order. **Any failure by a Klondex Shareholder to fully comply with the provisions of the BCBCA, as modified and supplemented by the Plan of Arrangement, the Interim Order and the Final Order, may result in the loss of that holder's Dissent Rights. Voting against the Arrangement Resolution does not satisfy the notice requirements under Division 2 of Part 8 of the BCBCA.**

*Id.* at 121 (emphasis in original).

On June 15, 2018, plaintiffs Lawson and Baker filed separate suits against Klondex for violations of the Securities Exchange Act ("SEA").[4] ECF No. 1; *Baker*, 3:18-cv-00288-LRH-CLB, ECF No. 1. Almost immediately thereafter, on June 20, 2018, plaintiff Baker motioned the court for a preliminary injunction to enjoin the July 12, 2018, shareholder vote.[5] *Baker*, 3:18-cv-00288-LRH-CLB, ECF No. 5. The Honorable Miranda Du, the initial presiding judge over *Baker*, heard oral argument on July 10, 2018, and issued a ruling from the bench denying the preliminary injunction. *Baker*, 3:18-cv-00288-LRH-CLB, ECF Nos. 26 & 27. Judge Du reasoned that plaintiff Baker had not met his burden of showing irreparable harm:

> The Canadian Court issued an interim order regarding the Definitive Arrangement Agreement, or what I will refer to as the Arrangement Agreement, between Klondex and Hecla, which, essentially, protects plaintiffs from such harm. The Canadian Court has authority to approve the transaction after the shareholder meeting. Because the transaction, as I view it, is not complete upon shareholders' vote the plaintiff seeks to enjoin, but upon approval by the Canadian court, plaintiff cannot be harmed by the shareholder vote. Moreover, in deciding whether to issue a final order approving of the Arrangement Agreement, that court will determine whether the [sic] and conditions of the arrangement are procedurally and substantially fair and reasonable. . . .
>
> Plaintiff argues that such a process does not involve a determination of whether the Proxy solicitation contains material omissions that are false and misleading. I disagree. It seems logical that a determination of whether the terms of the arrangement agreement are substantially fair and reasonable, would inherently involve a determination of whether the transaction was secure through the use of materially false and misleading information.
>
> Finally, the Canadian proceedings allow for plaintiff and the other shareholders to raise objection to the Arrangement Agreement as well, which gives them another relief.

*Baker*, 3:18-cv-00288-LRH-CLB, ECF No. 27 at 20-21; *Lawson*, ECF No. 35-2 at 21-22.

Thereafter, on July 12, 2018, as planned and ordered by the Canadian court's Interim Order, the shareholder vote occurred in Toronto, Ontario. ECF No. 35-3 at 4. During the meeting, 77.06 percent of Klondex shareholders and 77.46 percent of the securityholders were represented. *Id.* And 99.62 percent of shareholders and 99.61 percent of securityholders voted in favor of the plan of the proposed arrangement. *Id.*

---

[4] Along with the three above mentioned consolidated cases captioned as the instant action, *supra* note 3, shareholders filed two additional cases—*Assad v. Klondex Mines Ltd. et al.*, Case No. 2:18-cv-01065 (June 13, 2018) and *Chandra v. Klondex Mines Ltd.*, Case No. 3:18-cv-00305 (June 25, 2018)—which were voluntarily dismissed on September 11, 2018 and July 17, 2018, respectively.

[5] No similar motion was filed in *Lawson*.

Klondex returned to the Supreme Court of British Columbia to seek finalization of its petition on July 17, 2018. *Id.* at 3. The Supreme Court of British Columbia, in approving Klondex's petition, considered a three-prong test, as required under section 291 of the BCBCA: (1) whether the petitioner complied with the court-mandated and statutory requirements of the Interim Order; (2) whether "the petitioner put forward a proposed arrangement in good faith;" and (3) whether the arrangement is "both fair and reasonable." *Id.* at 5. The Canadian court noted that it was aware that shareholders had brought suit in the United States District Court for the District of Nevada, and that Judge Du had denied plaintiff Baker's motion for a preliminary injunction. *Id.* at 4. The Canadian court also noted that Baker had not filed an opposition with the court even though, at the time he was denied the preliminary injunction, it was open to him to do so. *Id.* "There was no filing of opposition in a formal way, and there has clearly been no attendance by anyone today opposed to the petition."[6] *Id.* at 5.

The Canadian Court therefore first held that Klondex properly complied with the requirements of the Interim Order: at the special meeting, approximately 99.6 percent of shareholders and securityholders voted in favor of the Arrangement, far above the court-mandated percentage, and that shareholders were properly informed of their dissent rights. *Id.* at 5-6. Second, the Court held that there was "ample evidence in the materials" the Court reviewed that Klondex put forth the Arrangement in good faith. *Id.* at 6. The Court reasoned:

> Good faith is often established, in my view, and particularly in this context, by a petitioner showing that there was a *bona fide* business reason for the actions that they are proposing to take. The evidence before me shows that there is a *bona fide* business reason for this proposed arrangement.
>    Good faith is also often established, or better put the court is satisfied as to "good faith" existence, by the absence of any allegation or appearance of motivation that is different from that of good faith or different from that of a *bona fide* business reason. There is nothing in the materials which suggest that there is any motivation other than a *bona fide* business reason for the proposed arrangement.

*Id.* (emphasis in original). In reaching the third prong of the test, fairness and reasonableness, the Canadian court reasoned:

---

[6] Lawson does not argue that he ever appeared before the Supreme Court of British Columbia or that he filed any documents with the Canadian court objecting to Klondex's petition or Arrangement Agreement or articulating the claims he advances before this court.

> [F]airness and reasonableness is often met, substantially and objectively met, when the arrangement has a valid business purpose. I have noted that it has, and the objects of those whose legal rights being arranged are being resolved in a fair and balanced manner. In that respect . . . the court does not have to determine that the proposed arrangement is most fair or the best possible proposal, but rather the court only needs to determine if the arrangement is fair and reasonable in all the circumstances.

*Id.* at 6-7. The Canadian court reasoned that unlike other petitions that lacked detailed analysis and factfinding in the fairness opinions, Klondex provided the Court and all shareholders with two fairness opinions, "one of which was internal and one which was truly independent in that it was created upon a request by a completely independent third party and it was created for a fixed fee." *Id.* at 7. "Additionally on the issue of fairness, there was an independent board that made a recommendation based on valid business considerations and based on a *bona fide* need of the corporate entity." *Id.* at 8. Finally, the court reasoned:

> There [was] . . . ample opportunity for persons to object, and no one has formally done so. I note as well that the notice itself provides a mechanism for objection to seek a court determination of value if one was considering the share value to be inadequate. That has never been exercised by anyone, and no doubt as a result of the above-noted [59 to 75%] premium being paid for the shares, it is unlikely that anyone would.

*Id.* at 8. Therefore, the Canadian court granted Klondex's petition, concluding that it was "more than satisfied here that all of the warning signs . . . and all of the potential roadblocks on the road to fairness . . . have been avoided here by the way in which this proposal was presented, the way in which notice was provided, the way in which the concept was independently arrived at and the way in which fairness opinions were obtained." *Id.* at 9.

On December 18, 2018, this court granted plaintiffs' motion to consolidate the three cases noted above (*supra* note 3). ECF No. 23. Lead plaintiff Lawson then filed a First Amended Complaint on February 4, 2019, alleging that the Proxy was materially incomplete and misleading and that it did not provide shareholders with the necessary information to make an informed vote on the merger. ECF No. 31. This first amended complaint alleges 2 causes of action—(1) violations of Section 14(a) of the SEA, Rule 14a-9, and 17 C.F.R. § 244.100 against all defendants; and (2) violations of Section 20(a) of the SEA against the individual named defendants. *See id.* Defendants then filed the instant motion to dismiss (ECF No. 34), which plaintiffs opposed (ECF No. 43).

After briefing on the motion closed, defendants filed a motion for leave to file a supplement to their reply brief (ECF No. 46), which plaintiffs also opposed (ECF No. 47). The court now rules on all pending motions.

## II. JUDICIAL NOTICE

Defendants request the court take judicial notice of 6 documents: (A) the Proxy; (B) the transcript from the preliminary injunction hearing held in *Baker*, 3:18-cv-00288-LRH-CLB, ECF No. 27, before Judge Du; (C) the Supreme Court of British Columbia's order in *In the Matter of a Proposed Arrangement Involving Klondex Mines, Ltd., Hecla Mining Company and 1156291 BC Unlimited Liability Company*, Court File No. VLC-S-S-186441 (July 17, 2018 Can. B.C.S.C.); (D) the March 19, 2018 Press Release; and (E and F) correspondence between plaintiffs' and defendants' counsel. ECF No. 35. Lawson opposed the defendants' request as to all documents. ECF No. 44. Pursuant to Federal Rule of Evidence 201, the court can take judicial notice of "a fact that is not subject to reasonable dispute," if it is "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

First, defendants ask the court to take judicial notice of the Proxy, which forms the basis of and is referenced extensively in Lawson's First Amended Complaint. The court may properly "take judicial notice of all public disclosure documents which are either required to be filed with the SEC or are actually filed with the SEC." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 293 (3d Cir. 1999) (Nygaard, J., concurring). On this issue, the court agrees with the Second Circuit's reasoning:

> First, the documents are required by law to be filed with the SEC, and no serious questions as to their authenticity can exist. Second, the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are relevant not to prove the truth of their contents but only to determine what the documents stated. Third, a plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's study of the documents. . . . Finally, we believe that under such circumstances, a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

7

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Here, the Proxy, which plaintiffs allege contained false or misleading representations and omissions, is a public document required by law to be filed with the SEC and as alleged by plaintiff, was actually filed with the SEC. Accordingly, the court takes judicial notice of Exhibit A only to determine what the document stated, and does not accept as true the facts contained therein.

Second, defendants ask the court to take judicial notice of the transcript from the preliminary injunction hearing before Judge Du in *Baker*. The "court may take judicial notice of its own records in other cases," *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980), as well as "court filings and other matters of public record," *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). This hearing before Judge Du is part of the record before this court, was public, as was her ultimate ruling from the bench during the hearing. Furthermore, had the three cases been consolidated into *Baker*, rather than *Lawson*, Judge Du would be able to consider her prior ruling. Therefore, the transcript of Judge Du's hearing in *Baker*, Exhibit B, is judicially noticed.

Third, defendants ask the court to take judicial notice of the Supreme Court of British Columbia's Order of July 17, 2018. As discussed above, court orders and filings may be properly noticed under Federal Rule of Evidence 201(b). Additionally, courts "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted) (taking judicial notice of the California Superior Court's proceedings because they were "directly related" to the appeal and "may in fact be dispositive."). Because the Supreme Court of British Columbia's order, Exhibit C, is directly related to the matters at issue in this case, and because, as the court finds below, international comity dictates that the court must give full and conclusive effect to the Canadian judgment, the court takes judicial notice of the order.

Fourth, defendants ask the court to take judicial notice of the March 19, 2018 Press Release filed with the SEC as Exhibit 99.1 to a Form 8-K. The court may "consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is

8

central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs' first amended complaint relies on this press release—a large part of it is copied and pasted directly into the Complaint at pages 13 through 17 (*see* ECF No. 31)—and Lawson does not argue that the copy attached to the 12(b)(6) motion was not the press release of March 19, 2018. Additionally, the press release is referenced in the Proxy on page 55 and was filed with the SEC on March 19, 2018. Therefore, it is appropriate to take judicial notice of the press release. *See Kramer*, 937 F.2d at 774. However, like above, the court cannot assume the truth of the contents of the press release because Lawson's First Amended Complaint alleges that it contains false or misleading statements. *In re Solar City Corp., Sec. Litig.*, 274 F.Supp.3d 974, 988 (N.D. Cal. 2017).

The court declines to take judicial notice of Exhibits E and F because the email correspondence between counsel are not facts "generally known" within this District's territorial jurisdiction, nor can they "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201; *Stamas v. County of Madera*, Case No. CV F 09-0753 LJO SMS, 2010 WL 1416866, *4 (E.D. Cal. April 8, 2010) ("The email correspondence and the letters to and from counsel are not judicially noticeable because they are not facts 'generally known' in the community and are not 'capable of accurate and ready determination.'").

Therefore, the court takes judicial notice of Exhibits A and D but does not take as true the facts contained therein. The court takes judicial notice of Exhibits B and C. And, the court denies defendants' motion for judicial notice of Exhibits E and F.

## III. DISCUSSION

Lawson's first amended complaint alleges two causes of action—(1) violations of Section 14(a) of the SEA, Rule 14a-9, and 17 C.F.R. § 244.100 against all defendants; and (2) violations of Section 20(a) of the SEA against the individual named defendants. *See* ECF No. 31. Defendants advance a number of arguments in their motion to dismiss; each is discussed in turn below.

///

## A. International Comity

Defendants first argue that principals of international comity counsel this court to abstain from exercising jurisdiction and defer to the Canadian court's ruling that the Arrangement Agreement was fair and reasonable. Defendants argue that the Canadian court is an adequate forum, and that "Canada has a strong interest in maintaining the authority of its court system, the fairness of its business transactions, and the disclosures related to those transactions." ECF No. 34 at 14. Finally, defendants argue that the United States' interest in enforcing section 14(a) of the SEA is sufficiently outweighed by the Canadian interests—there is not a sufficient difference between the Canadian law and United States law to justify ignoring international comity. *Id.* In opposition, Lawson argues that each prong of the international comity analysis counsels the court to deny defendants' motion. Upon review, the court grants defendants' motion to dismiss on this ground.

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994) (quoting *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Nevertheless, in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Id.*  As the Supreme Court articulated:

> 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the right of its own citizens, or of other persons who are under the protections of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). "The comity thus extended to other nations . . . is the voluntary act of the nation by which it is offered; and is inadmissible when contrary to its policy, or prejudicial to its interests. But it contributes so largely to promote justice between individuals, and to produce a friendly intercourse between the sovereignties to which they belong; that Courts of justice have continually acted upon it, as part of the voluntary law of nations." *Bank of Augusta v. Earle*, 38 U.S. 519, 589 (1839); *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the Southern Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987) ("Comity refers

to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."); *Mujica v. AirScan Inc.*, 771 F.3d 580, 605 (9th Cir. 2014) (quoting *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)) (Comity "rests on respect for the legal systems of members of the international legal community—a kind of international federalism—and thus 'serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.'").

There are two distinct doctrines of international comity—"[t]he first is legislative or 'prescriptive comity,' which guides domestic courts as they decide the extraterritorial reach of federal statutes," and the second is adjudicatory comity or "comity among courts," which is "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Mujica*, 771 F.3d at 598-99 (internal citations omitted). The Ninth Circuit's opinion in *Mujica v. AirScan Inc.* provides the analytical framework for the court's international comity evaluation under the second doctrine, at issue here—the court considers three factors: (1) the interests of the United States; (2) the foreign state's interest; and (3) the adequacy of the foreign forum. *Id.* at 603-04.

i.   U.S. Interests

To consider the U.S. interests prong, the court looks at "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests."[7] *Id.* at 604.

First, because "comity is most closely tied to the question of territoriality," the court considers "where the conduct in question took place." *Id.* at 604-05. Lawson contends that a majority of the conduct occurred in the United States: the Proxy was filed with the SEC in the United States; Klondex was traded on the U.S. Stock Exchange, and Klondex's assets sold as part of the transaction were all located in the United States. Defendants maintain that the transaction at issue took place in Canada—the Arrangement Agreement, detailed to shareholders in the allegedly false and misleading Proxy, was voted on by shareholders at the meeting held in Toronto, Canada, and the Arrangement Agreement was subject to the approval of the Canadian judicial system. The

---

[7] This is a nonexclusive list of factors that guides the court's decision. *See Mujica*, 771 F.3d at 604.

court also finds that the Proxy lists a Canadian address, 1055 West Hastings Street, Suite 2200, Vancouver, British Columbia V6E 2E9, which lends itself to the inference that the Proxy with the alleged offending language was drafted in Canada. The court finds that the conduct at issue occurred in both Canada and the United States; therefore, the court considers this a neutral factor.

Second, the court takes "account of whether any of the parties are United States citizens or nationals, and also whether they are citizens of the relevant state." *Id.* at 605. While "the presence of U.S. nationals . . . does not establish jurisdiction in this country on its own, it can, as we have noted, contribute to a finding that there is a 'nexus' between the United States and the parties and claims in a case." *Id.* "[T]he weaker the nexus between the challenged conduct and U.S. territory or U.S. parties, the weaker the justification for adjudicating the matter in U.S. courts and applying U.S. federal or state law." *Id.* at 605-06. Klondex is incorporated under the laws of British Columbia, Canada, and has its principal place of business in the United States (Reno, Nevada), in this District. Hecla is also incorporated in Canada. Defendants further argue that a majority of the director defendants are Canadian (ECF No. 45 at 8 (citing Proxy at 174-76)), though Lawson fails to allege the domiciles of these director defendants (*see* ECF No. 31). Plaintiff Lawson also does not plead his citizenship or domicile, but simply argues that this factor weighs in favor of the court retaining jurisdiction because "thousands of [Klondex's] stockholders were U.S. nationals." ECF No. 43 at 11. While the court takes as true that many of Klondex's shareholders may be U.S. nationals, the court finds that U.S. nationals are not necessarily more prevalent in this litigation than any other national. Therefore, the court considers the parties' nationalities a neutral factor.

Third, the court considers the nature of the conduct at issue. The court asks "whether the action is civil or criminal; whether it sounds in tort, contract, or property; and whether the conduct is a regulatory violation or is a violation of international norms against torture, war crimes, or slavery." *Mujica*, 771 F.3d at 606. "The closer the connection between the conduct and core prerogatives of the sovereign, the stronger that sovereign's interest." *Id.* Here, the instant action is a civil action in which the conduct alleged is a regulatory violation. Therefore, like the Ninth Circuit considered in *Timberland Lumber Co. v. Bank of America, N.T. and S.A.*, an anti-trust case, the court looks at "the relative significance of effects on the United States as compared with those

elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, . . . and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad." *Id.* (quoting *Timberlane I*, 549 F.2d 597, 614 (9th Cir. 1976)).

The primary purpose of the Securities and Exchange Act is "[t]o provide for the regulation of securities exchanges . . . operating in interstate and foreign commerce and through the mails, to prevent inequitable and unfair practices on such exchanges . . .." UNITED STATES STATUTES AT LARGE, 73 Cong. Ch. 404, June 6, 1934, 48 Stat. 881. It is abundantly clear that the United States has a strong interest in seeing its laws and regulations followed. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 924 (D.C. Cir. 1984) ("[T]he United States has a substantial interest in regulating the conduct of business within the United States."). Specifically, it will significantly affect the United States if corporations can file false and misleading Proxy statements in violation of the SEA, and not be held accountable. While "foreign corporations are privileged to and do rely on United States law," shareholders purchasing stock of companies on the U.S. Stock Exchange, rely on the ability to sue the corporation for fraud in the United States. *See id.* at 925. Therefore, the court finds that there is a strong nexus between the alleged conduct, the filing of a false or misleading proxy statement, and the purpose of the SEA.

Fourth, "Courts have found that U.S. interests weigh against hearing cases where doing so would be harmful to U.S. foreign policy." *Mujica*, 771 F.3d at 606. It is important "to foster international cooperation and encourage reciprocal recognition of U.S. judgments in foreign courts." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F.Supp.2d 1, 8 (D.D.C. 2013) (citing *Oetjen v. Central Leather Co.*, 246 U.S. 297, 304 (1918) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations.")). The United States has a cordial and productive relationship with Canada. *See Ritchie v. McMullen*, 159 U.S. 235, 242 (1895) (reasoning that "By the law of England, prevailing in Canada, a judgment rendered by an American court under like circumstances would be allowed full and conclusive effect.")

///

13

Here, the Canadian court considered the Arrangement Agreement and held that it was fair and reasonable to the shareholders and securityholders. In doing so, the Canadian court reviewed disclosures made to shareholders, including the fairness opinions alleged by Lawson to be false or misleading. Lawson therefore asks this court to reexamine (and perhaps condemn) the Canadian court's decision, which the court finds may imperil the amicable relationship between these two governments, and to do so would certainly not foster international cooperation. Further, the court finds that Lawson could have tried this issue before the Canadian court. All shareholders were provided with the information regarding their dissenters' rights and the ability to file an opposition to Klondex's petition with the Canadian court. Judge Du also made clear to plaintiff Baker that he had the ability to raise an objection to the Arrangement Agreement before the Canadian court. As provided for in the Canadian court's Order of July 17, 2018, had any shareholder brought forth concerns that the Proxy statement contained false or misleading information, the Canadian court would have considered that information in making its decision. *See* ECF No. 35-3.

Moreover, Canada has an equally important interest in ensuring that companies incorporated within its borders follow its own laws and regulations for mergers and sale agreements, which includes ensuring that arrangement agreements, like that at issue here, are fair and reasonable to all shareholders. Lawson's allegation of false and misleading disclosures equally effects and is of equal importance to Canada. *See Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 556 (9th Cir. 1992) ("Mexico and the United States have a common interest in preventing trademark violations and in the protection of any valid Mexican and American trademark registrations owned by Reebok."). Because Klondex is both traded on the U.S. Stock Exchange and is incorporated under the laws of British Columbia, both Canada and the United States have concurrent jurisdiction. "[T]he fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Laker*, 731 F.2d at 926-27. However, "the parallel proceeding rule applies only until a judgment is reached in one of the actions. After that point, the second forum is usually obliged to respect the prior adjudication of the matter." *Id.* at 929; *see also Turner Entm't*

*Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994) (internal citations omitted) ("While courts regularly permit parallel proceedings in an American court and a foreign court, once a judgment on the merits is reached in one of the cases, as in the [Canadian] forum in this case, failure to defer to the judgment would have serious implications for the concerns of international comity. For example, the prospect of 'dueling courts,' conflicting judgments, and attempts to enforce conflicting judgments raise major concerns of international comity.").

Here, the Canadian proceeding and that before this court were initially parallel proceedings. That is no longer the case: the Canadian court has reached final judgment on whether the Arrangement Agreement was fair and reasonable to shareholders. In coming to this decision, the Canadian court specifically discussed the disclosures, including the alleged false and misleading fairness opinions. Accordingly, the court is obliged to respect the Canadian court's adjudication of this matter. *See Mujica*, 771 F.3d at 608 (internal quotation marks and citation omitted) ("Comity, as the golden rule among nations, compels [the court] to give the respect to the laws, polices and interests of others that [we] would have others give to [our] own in the same or similar circumstances."). The court therefore finds that because hearing this case would be harmful to U.S. foreign policy, this factor weighs in favor of abstention and deferring to the Canadian court's judgment.

Fifth, the court considers U.S. public policy interests because "courts will not extend comity to foreign proceedings when doing so would be contrary to the policies or prejudicial to the interests of the United States." *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997). The court is satisfied that extending comity to the Canadian judgment would not be contrary to the public policy of the United States. As discussed above, the SEA is meant to protect shareholders from corporations not acting fairly and equitably, and the United States has a strong interest in seeing that purpose fulfilled. However, the court finds that comity does not offend or hinder this strong interest. Rather, the SEA's purpose is directly in line with the BCBCA which provides for judicial oversite and approval of mergers and acquisitions to ensure that shareholders are treated fairly and reasonably. *See DeYoung v. Beddome*, 707 F.Supp.132, 135 (S.D.N.Y. 1989) (reasoning that the procedures under the CBCA, akin to the BCBCA, "would

seem to be if anything more protective of the rights of shareholder plaintiffs in this case than procedures they might expect to encounter in this country."). While the two legal approaches for fulfilling this purpose are different, courts treat such differences cautiously. *See Mujica*, 771 F.3d at 607. "Even when foreign practices may differ from American ones, we will respect those differences so long as the variance does not violate strongly-held state or federal public policy." *Id.* Because deferring to the Canadian court's judgment does not violate U.S. policy, this factor weighs in favor of abstention.

Because the above 5 factors are a nonexclusive list, *id.* at 604, the court also considers judicial economy and efficiency and fairness to the parties, which too bear on whether it is in the best of interest of the United States to retain jurisdiction.

The court finds that retaining jurisdiction is not in the best interests of judicial economy and efficiency. While it is a federal law that provides a cause of action for this derivative suit, pursuant to the internal affairs doctrine, "the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated." *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998). Lawson's right therefore to sue derivatively on behalf of all other shareholders must be determined by the laws of British Columbia. To come to that conclusion, the court will be required to consider and rule on unknown foreign law. It cannot be concluded that this is in the best interests of judicial economy and efficiency when Lawson was fully informed of and could have brought these claims before the Canadian court.

Further, "[i]n an era of increasing international commerce, parties who choose to engage in international transactions . . . cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere." *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 978 (9th Cir. 1977). Here, Lawson and all other Klondex shareholders, chose to become investors in a corporation incorporated in Canada. *See Fleeger v. Clarkson Co. Ltd.*, 86 F.R.D. 388, 393 (N.D. Tex. 1980) ("[E]ven if Canadian law did not supply the substantive cause of action, the Court would still hesitate to take jurisdiction because Plaintiff voluntarily purchased shares in a

Canadian corporation which put him on notice that his rights as a shareholder would be construed according to Canadian law."). That Canadian corporation then decided to engage in an arrangement agreement with another corporation, Hecla, also incorporated in Canada. Under that Arrangement Agreement, the parties agreed that the Governing law, "including as to validity, interpretation and effect," would be "the laws of the Province of British Columbia and the laws of Canada applicable therein." ECF No. 35-1 at 616. Shareholders were also informed, first in the March 19, 2018 press release, and then in the Proxy itself, that the Plan of Arrangement was subject to court approval under the Business Corporations Act (British Columbia). Lawson knew of the Canadian forum and that it was specifically ruling on whether the Arrangement Agreement was fair and reasonable to him, a shareholder. But he made the choice to file a separate lawsuit, in another country, rather than join one already pending. The court cannot find that it is fair to defendants, who properly brought suit in the Canadian court and made reasonable efforts to litigate plaintiffs' claims before that Canadian court, to allow plaintiffs a second bite of the apple now.

In evaluating the U.S. interests, the court finds 2 factors neutral, 1 factor in favor of retaining jurisdiction, and two factors in favor of abstention. The balance of these factors, along with those of judicial economy and efficiency and fairness, counsels the court that abstention is appropriate.

ii.   Foreign Interests

"The proper analysis of foreign interests essentially mirrors the consideration of U.S. interests. Foreign states, no less than the United States, have legitimate interests in regulating conduct that occurs within their borders, involves their nationals, impacts their public and foreign policies, and implicates universal norms." *Mujica*, 771 F.3d at 607. "Accordingly, courts have considered the territoriality of the questioned activity, its effects, the nationality of the parties, and the interest of the foreign state when deciding whether to exercise jurisdiction." *Id.*

It cannot be disputed that Canada has a legitimate interest here. It has an interest in regulating conduct that occurs within its borders—the Proxy statement appears to have been written in Canada; and the Arrangement Agreement (which the Canadian court held was fair and reasonable to shareholders) was approved at a shareholder meeting in Toronto, Canada. Canada

has a legitimate interest in regulating conduct of their nationals—Klondex is a Canadian corporation, incorporated under the laws of British Columbia, as is Hecla. Canada has a legitimate interest in regulating conduct that impacts their public and foreign policy—British Columbia enacted the BCBCA, which provides a procedure for court ordered approval of arrangements of corporations incorporated in Canada and ensures that arrangement agreements are fair and reasonable to shareholders. It would be illogical to find that Canada does not have a legitimate interest in seeing these court orders followed. *See Mujica*, 771 F.3d at 611 (quoting *Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2d Cir. 1998)) ("Although [Canada's] position is not detailed, 'inherent in the concept of comity is the desirability of having the courts of one nation accord deference to the official position of a foreign state . . . taken within or with respect to its own territory.'"). Accordingly, the court finds that Canada's interest in serving as the forum for this litigation is strong.

### iii.    Adequacy of the Foreign Forum

"[D]eference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("*JP Morgan*"). In considering the adequacy of the foreign forum, the court looks at "(1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial and repugnant to fundamental principles of what is decent and just." *Mujica*, 771 F.3d at 608 (internal quotations and citations omitted). "Typically, courts ask whether one side has presented specific evidence that the judgment of the alternative forum was significantly inadequate." *Id.* "We are justly proud of our legal system. But we recognize that there are other legal systems that have effected, in different ways, our constitutional values of separation of powers, due process of law, and the equal protection of the law." *Id.*

First, there is nothing in the record that shows, nor does Lawson argue, that the Canadian court's judgment was rendered by fraud. Second, there is no question that the Canadian court is a competent court that utilized proceedings consistent with civilized jurisprudence. *See DeYoung*,

707 F.Supp at 135 (quoting *Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976)) ("[T]he foreign jurisdiction involved is Canada, 'a sister common law jurisdiction with procedures akin to our own.'"). The District Court of New York in *DeYoung* further reasoned that the "procedures adopted by the Court of Queen's Bench in Alberta under the CBCA [similar to the at issue BCBCA], and affirmed by the Court of Appeal, would seem to be if anything more protective of the rights of the shareholder plaintiffs in this case than procedures they might expect to encounter in this country," and that "the law of the foreign jurisdiction affords plaintiffs substantive rights similar to those they have here, with comparable standards of proof." *Id.* at 135-36; *see also Ritchie*, 159 U.S. at 240 ("Upon this record, the queen's bench division of the high court of justice of the province of Ontario must be taken to have been a competent court[.]"); *Fleeger v. Clarkson Co.*, 86 F.R.D. 388, 391-393 (N.D. Texas 1980) ("American courts have consistently deferred to Canadian courts under the principle of comity because Canada is a sister common-law jurisdiction."). Third, nothing in the record shows that Canada's decision resulted in "manifest injustice" or violated "fundamental standards of procedural fairness." While the Canadian court clearly has a different method and legal approach to approving such mergers and acquisitions, the court cannot find that simply because it is different from our legal approach it is somehow inadequate.

Lawson argues that the Canadian court was inadequate for two reasons: (1) because it did not make a ruling on whether the disclosures at issue here were fair; and (2) because the court made its ruling based on "the materials I have had an opportunity to review over the lunch hour." ECF No. 43 at 11-12. The court disagrees.

Lawson's First Amended Complaint alleges that the Proxy misrepresented and omitted material facts such that the merger consideration did not represent fair value for the Klondex shareholders. *See* ECF No. 31 ¶¶ 67-80. The Canadian court addressed this point directly—"I note as well that the notice itself provides a mechanism for objection to seek a court determination of value if one was considering the share value to be inadequate. That has never been exercised by anyone, and no doubt as a result of the above noted premium paid for the shares, it is unlikely that anyone would." ECF No. 35-3 at 9. Next, Lawson's First Amended Complaint alleges that the

Proxy violated section 14(a) because the financial projections contained misleading statements and omissions. *See* ECF No. 31 ¶¶ 82-95. The Canadian court, in finding that Klondex had a bona fide business purpose for the Plan of Arrangement, clearly takes into account the current and future financial status of Klondex. Finally, Lawson's First Amended Complaint alleges that the fairness opinions were false or misleading. This too the Canadian court discussed: "[T]here are before the Court and there was provided to all shareholders affected two fairness opinions, one of which was internal and one which was truly independent in that it was created upon a request by a completely independent third party and it was created for a fixed fee." ECF No. 35-3 at 7. To have this court hold that the Canadian court's ruling that the Arrangement Agreement was fair and reasonable to shareholders did not necessarily include a review of these disclosures is not only illogical but also in contrast to the record before the court.

As to Lawson's second argument, the court is not concerned with the Canadian court's mention that it "had an opportunity to review over the lunch hour," the ample evidence presented by Klondex in support of their petition. ECF No. 35-3 at 6. This case initially came before the Canadian court when Klondex filed its petition on June 5, 2018. It did not make a final ruling until July 17, 2018, more than a month later. It may be presumed that prior to the hearing on July 17, 2018, the court was well versed in this case, and had taken the time necessary to review the petition with the diligence that "ample evidence" would require.

iv.    Balance of the *Mujica* Factors

Upon review, the court concludes that relevant concerns of international comity weigh in favor of deference to the Canadian court which has rendered judgment on the merits at issue in this case. The balance of the U.S. interests weighs in favor of abstention, Canada has a significant interest in hearing this case, and the Canadian court is clearly an adequate forum. The court further finds that by giving effect to the Canadian court's judgment, the interests of both forums are advanced—the Canadian court "because its laws and policies have been vindicated;" and the U.S. courts "because international cooperation and ties have been strengthened." *Laker*, 731 F.2d at 937. Because the Canadian court's decision was final and it was rendered under like circumstances as what would have been present in a court of this country, the Canadian court's judgment will be

given full and conclusive effect. *See Ritchie*, 159 U.S. at 242 ("The defenses set up in the answer to this action upon the Canadian judgment reduce themselves to an attempt, without any sufficient allegation of want of jurisdiction of the cause or of the defendant, or of fraud in procuring that judgment, or of any other special ground for not allowing the judgment full effect, but upon general allegations setting up the same matters of defense which were pleaded and might have been tried in the foreign court, to reopen and try anew the whole merits of the original claim in an action upon the judgment."). Accordingly, dismissal of Lawson's First Amended Complaint is appropriate on international comity grounds.

### B. Waiver

Second, defendants argue that Lawson's First Amended Complaint should be dismissed because when he and the other shareholders failed to object to the Arrangement Agreement before the Canadian court, they waived their right to assert their claims here. Lawson argues that he did not have any obligation to bring his federal section 14(a) claims in the Canadian court, and he had no reason to believe that his American claim would be waived by failing to appear. The court disagrees.

"[W]aiver is 'the voluntary or intentional relinquishment of a known right. It emphasizes the mental attitude of the action.' Since waiver is a voluntary act, there must be knowledge of the right in question before the act of relinquishment can occur." *Royal Air Properties, Inc. v. Smith*, 333 F.2d 568, 571 (9th Cir. 1964) (quoting *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829 (9th Cir. 1957). "[W]aiver of rights under the Securities Exchange Act of 1934 should be limited to those cases where it is intended, and that therefore the right in question must be found to be actually known before waiver becomes effective." *Id.*

On the facts as pled by Lawson, the earliest Lawson could have received notice of his right to object was on March 19, 2018, when the press release was published. This press release articulated that the "Transaction will be implemented by way of a Court-approved Plan of Arrangement under the Business Corporations Act (British Columbia)." ECF No. 31 at 17. This press release further articulated that shareholders would receive a copy of the Proxy statement by mail, or they could request it from either Klondex or Hecla or could access documents filed with

the SEC via their website. ECF No. 35-4. "When waiver is predicated on facts on which one has inquiry, but not actual, notice, it is no longer intentional." *Royal Air*, 333 F.2d at 571. While it is clear that shareholders at this point were aware that the law of British Columbia would govern the Arrangement Agreement, it was not clear what the shareholder's rights to object or bring claims might be. Therefore, the court finds at this point, shareholders only had inquiry notice of their rights and waiver is inapplicable.

On June 12, 2018, Klondex mailed the Proxy to shareholders and it was filed with the SEC. The Notice of Annual and Special Meeting of Securityholders that accompanied the Proxy statement included that Klondex shareholders had a right of dissent, the procedure for exercising that right, and, in bold lettering, that "Failure to strictly comply with the provisions of the BCBCA, as modified and supplemented by the Plan of Arrangement, the Interim Order and the Final Order, may result in the loss of any right of dissent." ECF No. 35-1 at 9. It did not say that he would waive only the rights before the Canadian court, but any rights. Part 14 of the Proxy then provided that "Each Dissenting Shareholder is entitled to be paid the fair value (determined immediately before the Arrangement Resolution is approved) of all, but not less than all, of the holder's Klondex Shares, provided that the holder validly dissents to the Arrangement Resolution and the Arrangement becomes effective." ECF No. 35-1 at 121. Therefore, at the time Lawson received the Proxy statement, he was on actual notice that if he believed the Proxy contained false and misleading disclosures, which he alleges included inadequate consideration and caused him economic harm, he was to file notice with the Canadian court. Lawson, and all other shareholders, failed to do so. The court therefore finds that at this point, his failure to object to the Arrangement Agreement before the Canadian court and allege that the disclosures were false or misleading, constituted a waiver of his right to bring that same claim before this court.

Even if the court were to find that at the time he received the Proxy statement he was only on inquiry notice of his rights, he had actual notice, at the very least, on the day he filed his Complaint with this court: June 15, 2018. In his complaint he argues that the Proxy was false or misleading; therefore, it must be presumed that he reviewed the Proxy in its entirety, which included not only the waiver warning in the Notice, but Part 14 as well. If he read the statement in

full, he was clearly aware of his rights, the governing law, and that a failure to dissent through the provided procedure would result in a loss of any rights. While not all "circumstances require that a dissatisfied stockholder be denied relief if he has failed seasonably to dissent," the court considers whether shareholders acted with "diligence in informing himself of and in asserting his rights." *National Supply Co. v. Leland Stanford Junior University*, 134 F.2d 689, 692 (9th Cir. 1943). Lawson's lack of diligence in asserting his rights before the Canadian court is apparent: if there was ample time to file this lawsuit before the District Court, there was clearly ample time to file written notice with the Canadian court objecting to the Arrangement Agreement and alleging that the disclosures were false and misleading.

The court therefore finds that Lawson, and all other plaintiffs similarly situated that failed to object to the Arrangement Agreement, have waived their right to now allege the disclosures were false or misleading before this court. Accordingly, on this ground, the court grants defendants' motion to dismiss.

**C. Conclusions on the merits: Lawson has failed to state a claim for which relief can be granted for his first and second causes of action.**

### i. General Legal Standard for Motion to Dismiss under 12(b)(6)

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* FED. R. CIV. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

///

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Id.* at 680-81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

ii.      Section 14(a), Rule 14a-9 claim

Rule 14(a)-9 provides that:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]

17 C.F.R. § 240.14a-9. "Information is deemed material for purposes of a § 14(a) claim 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *In re NAHC, Inc. Securities Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). "In addition, a Section 14(a), Rule

14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). These claims sound in fraud, and therefore the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) require Lawson to plead his "case with a high degree of meticulousness." *Id.*

Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "The PSLRA modifies Rule 9(b), providing that a securities fraud plaintiff shall identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Desaigoudar*, 223 F.3d at 1023; 15 U.S.C. § 78u-4(b)(1). To the extent an allegation is based on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). The PSLRA also amended the SEA to require that the complaint plead scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) *as amended* (Feb. 10, 2009). The complaint must therefore "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). That is, plaintiffs must plead with particularity the facts evidencing "the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (internal quotation marks and citation omitted). To satisfy the rigorous pleading standards of the PSLRA, the complaint's scienter allegations must give rise not simply to a plausible or reasonable inference of scienter, but "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. "Moreover, the complaint must set forth a causal connection between the material misrepresentation and an economic loss to the plaintiff." *Resnik v. Woertz*, 774 F.Supp.2d 614, 630 (D.C. Del. 2011); 15 U.S.C. § 78u-4(b)(4). To show loss causation,

1  Lawson must demonstrate that the defendant "caused the loss for which the plaintiff seeks to
2  recover damages." 15 U.S.C. § 78u-4(b)(4).

3      Lawson's First Amended Complaint alleges that the Proxy statement was materially
4  deficient and misleading because it "fails to disclose material information regarding (i) the
5  financial projections for the Company, and Hecla, which were prepared by Company management
6  and /or relied upon by GMP Securities, L.P. ("GMP"), INFOR Financial, Inc. ("INFOR"), and
7  Maxit Capital L.P. ("Maxit"), the Company's financial advisors, and (ii) the financial analysis
8  performed by GMP, INFOR, and Maxit to support their opinions on the fairness of the Transaction.
9  Without additional information the Proxy was materially misleading in violation of federal
10  securities laws." ECF No. 31 at 2-3, ¶2.

11      Lawson lays out a litany of allegations as to why the Proxy contained materially false or
12  misleading statements and/ or omitted material information. Because the court found above that
13  the Canadian judgment, that the Arrangement Agreement was fair and reasonable to shareholders,
14  must be given full and conclusive effect, the court sees no reason to delve into each of these
15  allegations separately. Even if the Proxy may have contained false or misleading statements or
16  omitted information, if the Arrangement Agreement was fair and reasonable to shareholders, there
17  is not a substantial likelihood that a reasonable shareholder would have considered the missing
18  information important in deciding his or her vote. Because a baseline element, that the allegedly
19  false or misleading or omitted information be material, fails, Lawson's section 14(a) claim cannot
20  be maintained. Similarly, if the Arrangement Agreement was fair and reasonable to shareholders,
21  then it is illogical that the allegedly false or misleading information caused economic harm to the
22  shareholders. Finally, Lawson has failed to adequately plead scienter—nothing within his First
23  Amended Complaint alleges, with particularity, defendants' "intention to deceive, manipulate, or
24  defraud," shareholders. Accordingly, the court finds that Lawson's section 14(a) claim fails and
25  the court grants defendants' motion to dismiss.

26          iii.    Section 20(a) claims

27      Section 20(a) of the SEA imposes liability upon a "defendant employee of a corporation
28  who has violated the securities laws . . ., as long as the plaintiff demonstrates a primary violation

of federal securities law and that the defendant exercised actual power or control over the primary violator." *City of Dearborn Heights Act 345 Police and & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (internal quotation marks and citations omitted). Accordingly, a Section 20(a) claim fails if the plaintiff does not establish a primary violation of federal securities law. *Id.*

Lawson alleges two violations of federal securities law: a violation of section 14(a) and a violation of section 20(a). As discussed above, Lawson's section 14(a) claim fails. Accordingly, the court must also dismiss Lawson's section 20(a) claim since no primary violation of federal securities law survives.

## V. CONCLUSION

IT IS THEREFORE ORDERED that defendants' motion to dismiss (ECF No.34) is **GRANTED with prejudice**. The court declines to grant Lawson leave to amend because the court's abstention and waiver findings cannot be cured; therefore, such amendment would be futile. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (A court need not grant leave to amend a complaint if amendment would be futile).

IT IS FURTHER ORDERED that defendants' request for judicial notice (ECF No. 35) is **GRANTED in part** and **DENIED in part**. In accordance with this Order, the court takes judicial notice of Exhibits A and D but does not take as true the facts contained therein. The court takes judicial notice of Exhibits B and C. And, the court denies defendants' request for judicial notice of Exhibits E and F.

IT IS FURTHER ORDERED that defendants' motion to supplement their reply brief (ECF No. 46) is **DENIED as moot**.[8]

IT IS SO ORDERED.

DATED this 31st day of March, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[8] This motion is moot not only given the court's ruling on defendants' motion to dismiss (ECF No. 34), but also because the basis of this motion, *Fiegel v. Baker et al.*, was voluntarily dismissed by plaintiffs on August 14, 2019 (Case No. 1:19-cv-01455-MN, ECF No. 3).